989 A.2d 298 (2010)
412 N.J. Super. 218
Ronen SHIMONI, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
DOCKET NO. A-1408-08T1.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2010.
Decided March 5, 2010.
*299 Stephen N. Dratch, Livingston, argued the cause for appellant (Franzblau Dratch, P.C., attorneys; Mr. Dratch and Brian M. Dratch, on the briefs).
Susan M. Scott, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; *300 Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Scott, on the briefs).
Before Judges LISA, BAXTER and COBURN.
The opinion of the court was delivered by
COBURN, J.A.D. (temporarily assigned on recall).
Appellant, Ronen Shimoni, is an inmate incarcerated at Bayside State Prison in Leesburg, New Jersey. He applied for permission to serve the remainder of his sentence in Israel pursuant to N.J.S.A. 30:7D-1 and N.J.A.C. 10A:10-6.1 to -6.9, the statute and regulations governing international prisoner transfers. The Commissioner of Corrections denied Shimoni's application, and he appealed.
Shimoni was sentenced to the custody of the Commissioner of Corrections on April 15, 2005, after pleading guilty to first-degree robbery. The judgment required imprisonment for fourteen years, four years to be served without parole. The robbery occurred in 1994 and the victim was an off-duty sheriff's officer. Shimoni fled to Massachusetts and then to Canada. In 2003, he was finally found and arrested on this charge in Canada. He was extradited to New Jersey in 2005 and has been imprisoned here ever since.
On January 17, 2008, Shimoni, an Israeli citizen, applied to the Department of Corrections for permission to serve the remainder of his sentence in Israel. N.J.A.C. 10A:10-6.3(a) sets out the preliminary conditions that a prisoner must meet to be considered for international transfer, and Shimoni's application satisfied those conditions. Consequently, his application was duly processed. Ultimately, the Commissioner denied relief in a letter dated November 18, 2008, because of written "comments received from law enforcement authorities [and the trial judge]." Those comments, which need not be detailed, concerned the circumstances and seriousness of the offense and Shimoni's flight to Canada to avoid capture. The Commissioner added, "Furthermore, it is noted that although Mr. Shimoni's parents and siblings reside in Israel, his ex-wife and minor child reside in the United States." He closed by saying that Shimoni "should be encouraged to reapply for this transfer... two years after the original denial."
The statute on international prisoner transfers empowers the Governor to authorize the Commissioner of Corrections to approve the transfer of a prisoner to another country where he or she is a citizen. N.J.S.A. 30:7D-1. Other than requiring that the action be taken in accordance with an existing treaty between the United States and the foreign country, the statute contains no specific standards to guide the Commissioner's ultimate decision. These are the statute's purposes:
The practice of prisoner transfers should contribute to the easing of overcrowded conditions in the State prisons and will allow the transferred prisoners to be under the control of the country of their citizenship. The transfer may also increase rehabilitation of the person and reduce custody problems in the State related to cultural and language differences.
[Senate Health and Welfare Committee, Statement to S.B. 2229, reprinted in N.J.S.A. 30:7D-1.]
The regulations set forth detailed procedures to be followed by the Department of Corrections. N.J.A.C. 10A:10-6.1 to -6.9. One of the procedures is notification to the Attorney General, the State Police, the relevant County Prosecutor, and the sentencing judge, who are permitted to comment on the proposed transfer. N.J.A.C. 10A:10-6.6(a)(5) and (6). Thereafter, if the *301 prisoner has satisfied the preliminary eligibility criteria, N.J.A.C. 10A:10-6.3, the Commissioner decides whether to approve or disapprove the transfer. N.J.A.C. 10A:10-6.7(a); In re Arenas, 385 N.J.Super. 440, 446, 897 A.2d 442 (App.Div.), certif. denied, 188 N.J. 219, 902 A.2d 1236 (2006). The regulations contain no standards relating to the Commissioner's exercise of the ultimate decision.
Under the Federal Due Process Clause, "process" is due an inmate only if the inmate first establishes a constitutionally protected liberty interest. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174, 188-89 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."). A protected liberty interest is created not by the language of a state statute or regulation, but by the nature of the "restrictive conditions of confinement ... in relation to the ordinary incidents of prison life." Id. at 223, 125 S.Ct. at 2394, 162 L.Ed.2d at 190. Therefore, Shimoni must show that the Commissioner's refusal to grant his transfer to Israel "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Ibid. (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 430 (1995)); see also Shabazz v. N.J. Dep't of Corrs., 385 N.J.Super. 117, 123, 896 A.2d 473 (App.Div.2006) (applying the Wilkinson/Sandin standard).
In Sandin, supra, 515 U.S. at 485, 115 S.Ct. at 2301, 132 L.Ed.2d at 431, the Court found no liberty interest protecting against a thirty day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." However, in Wilkinson, supra, 545 U.S. at 223, 125 S.Ct. at 2394, 162 L.Ed.2d at 190, the Court held that inmates' assignment to "supermax" prisons imposed an atypical and significant hardship under any plausible baseline.
We do not hesitate to conclude that the denial of Shimoni's transfer request did not impose an "atypical and significant hardship" in relation to the normal incidents of prison life under any plausible baseline from which to measure what is, in fact, atypical and significant in any particular prison system. In fact, Shimoni's prison environment did not change at all; this action by the Commissioner merely maintained the status quo. We conclude that Shimoni had no constitutionally protected liberty interest in being transferred to Israel.
A prisoner denied international transfer may be entitled to a statement of reasons, cf. Monks v. N.J. State Parole Bd., 58 N.J. 238, 248-49, 277 A.2d 193 (1971), superseded by statute on other grounds, N.J.S.A. 30:4-123.14 (repealed 1980), as stated in N.J. State Parole Bd. v. Byrne, 93 N.J. 192, 204, 460 A.2d 103 (1983), but it does not follow that he is entitled to a general review on the question of whether the decision is arbitrary, capricious or unreasonable. Given the broad powers invested in the Commissioner by the statute at issue, we are satisfied that the reasons given cannot provide a basis for reversal "in the absence of proof that such deprivation was maliciously intended or with `such disregard of ... clearly established constitutional rights that [the] action cannot reasonably be characterized as being in good faith.'" Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 167, 390 A.2d 90 (1978). Although Shimoni argues that the Commissioner's decision was arbitrary, he does not contend that it was maliciously intended or based on constitutionally impermissible grounds such as race, religion, *302 or national origin. Consequently, reversal would be inappropriate.
We acknowledge that in Arenas, supra, 385 N.J.Super. at 446-47, 897 A.2d 442, the only previously reported decision concerning the international prisoner transfer statute, the court sustained the Commissioner's denial of an international transfer on the ground that it was neither arbitrary nor capricious. We further note that the court also said that "[a]n evidentiary hearing is not required and is not necessary since we find the reasons for the denial of Arenas's application and the record supporting those reasons are clear and not the subject of any factual dispute." Id. at 447, 897 A.2d 442.
Apparently, the analytical approach taken by the court in Arenas reflected the manner in which the parties framed the issues presented. Although the parties initially took the same approach here, we asked for further briefing on the issues which we ultimately perceived as controlling. Our consideration of those issues led us to the conclusion that in the area of international prisoner transfers, the Commissioner's decision is not subject to the ordinary standard for review of decisions by an administrative agency.
In summary, we are satisfied that on an application for international transfer, the Department of Corrections is required to follow the governing regulations, but the applicant is not entitled to a hearing and the Commissioner's decision may not be overturned unless made with malicious intent or on a constitutionally impermissible basis. No such showing was made here.
Affirmed.